No. 41,539

Security Milling Company, Inc., et al., *Appellees,* v. Richard E. Ketchum, et al., *Appellants.*

(347 P. 2d 433)

Opinion filed December 12, 1959.

*James P. Mize,* of Salina, argued the cause and *C. L. Clark* and *T. M. Lillard, Jr.,* both of Salina, were with him on the briefs for the appellants.

*Robert H. Royer,* of Abilene, argued the cause and *Paul H. Royer* and *James E. Ahearn,* both of Abilene, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: This appeal involves an action for property damage growing out of a collision between two trucks which occurred on the morning of February 1, 1957, on U. S. highway 81 at about 10:30 some seven miles south of Salina. The Security Milling Company as plaintiff sought to recover the value of its truck and cargo of grain from Ketchum, the owner and driver of the other truck. The defendant filed a cross-petition, and both trucks being operated as licensed motor carriers, their respective insurance companies were made parties to the action. After a trial to a jury, plaintiff received a verdict in the sum of $3,769.83, upon which the trial court entered judgment after the overruling of post trial motions. Defendant has appealed.

The plaintiff's truck at the time of the accident was being driven by Gerald Lady, who was killed in the collision. This action did not involve any claim for damage on account of his death or other personal injuries suffered by the drivers. The damage suffered by the parties as to the trucks and cargo was stipulated between the parties before the beginning of the trial and no evidence was introduced upon that subject.

At the time of the accident, plaintiff's truck, a 1957 Chevrolet, loaded with livestock and poultry feed was south bound. Defendant was driving his International truck tractor pulling a van type semi-trailer north on the highway. , The collision occurred some 156 feet north of a bridge in fair weather with a dry pavement and in full daylight. The paved portion of the highway was twenty feet wide and there were shoulders thirteen feet wide on each side of the road. Each truck is shown to have been eight feet wide. Obviously, the two trucks could easily have passed on the highway without colliding, and this action concerns the dispute as to which driver was at fault in allowing the collision to take place.

Defendant has specified nine errors in his abstract, some of which are obviously not subject to review upon this record, but has combined his objections into four heads in the brief. We shall take up these four questions separately.

Defendant first contends that the evidence is insufficient to sustain the answers to the special questions and the general verdict, and that therefore the judgment should be reversed. Despite the usual rule holding that this court in reviewing the question will look only to see whether there is any competent evidence to support the findings and verdict of the jury, and that matters of weight and credibility are for the triers of fact and not this court (West Kan. Dig., Appeal & Error, § 837 (7); Hatcher's Kan. Dig., Appeal & Error, § 495), defendant would seem to argue that a different rule should be applied in this case. It is contended that all of the evidence of plaintiff was circumstantial in that neither of plaintiff's two witnesses actually saw the accident happen, and that therefore, the findings of the jury were based upon mere speculation. We fear defendant has been carried away by his ardor and has overstated his case.

In *Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 98 P. 2d 162, the third paragraph of the syllabus reads:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the jury."

Later in the opinion of the Sternbock case, we find the following:

"It is true plaintiff attempted to establish the cause of the fire by circumstantial evidence. If such evidence fairly authorized the inference of negligence it was sufficient. (*Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468; *Cracraft v. Wichita Gas Co.*, 127 Kan. 741, 742, 275 Pac. 164.) This, however, was not a criminal action, but a civil action, and in order to sustain a verdict in a civil case circumstantial evidence need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury. (*Railroad Co. v. Perry*, 65 Kan. 792, 70 Pac. 876; *Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215; *Hashman v. Gas Co.*, 83 Kan. 328, 329, 111 Pac. 468; *Cracraft v. Wichita Gas Co.*, 127 Kan. 741, 742, 275 Pac. 164; *Asche v. Mathews*, 136 Kan. 740, 18 P. 2d 177; *Noller v. Aetna Life Ins. Co.*, 142 Kan. 35, 38, 46 P. 2d 22.) In *Railroad Co. v. Perry* it was held:

" 'The fact that soon after the passing of an engine a fire starts near a railway track in an enclosed field covered at that time with a growth of highly inflammable vegetation, and travels before a high wind in a direction away from the track, is sufficient to warrant a jury in finding that the fire was caused by the operation of the railroad, without its appearing that the engine emitted sparks or live cinders or was put to special exertion, and without further proof excluding other possible origins.' (Syl. ¶ 1.)"

The case of *Briggs v. Burk*, 174 Kan. 440, 257 P. 2d 164, involved an automobile accident much like the one in the case now being considered. In the opinion the court said in part:

"Under our decisions there can be no question that negligence may be established by circumstantial evidence (See, e. g., *Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 98 P. 2d 162, and cases cited at page 86 of the opinion; *In re Estate of Modlin*, supra), also that the physical facts of a motor vehicle collision may be sufficiently clear to enable the triers of fact to form a judgment of how the collision occurred and who was at fault, although there was no eye witness to the collision (*Sawhill v. Casualty Reciprocal Exchange*, 152 Kan. 735, 107 P. 2d 770).

"Long ago this court in *Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215, with respect to the sufficiency of circumstantial evidence and touching other matters pertinent to the issue now under consideration, said:    ·

"Circumstantial evidence in a civil case, in order to be sufficient to sustain the verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable hypothesis. The jury are not infrequently called on to decide between two or more theories, and in doing so may exercise their own best judgment in accordance with their oath-bound consciences. This must necessarily be so, for it is the province of the jury and not of the judge to determine whether the evidence better supports this or that theory. We invade their domain if we shall require them to say that a given set of circumstances are as consistent with one theory as with another. This court, in a very recent case (*Railroad Co. v. Perry*, 65 Kan. 792, 70 Pac. 876), had occasion to quote with approval the rule laid down by Professor Greenleaf upon this subject, which is as follows: 'In civil cases it is sufficient if the evidence on the whole agrees with, and supports, the hypothesis which it is adduced to prove.' Greenl. Ev., § 13a.)

"It is true, as announced in *Railroad v. Rhoades*, supra, that presumptions may not be based upon presumptions, and that it will not do to consider chance or circumstantial evidence having but a questionable or circumstantial basis of fact, but this is very far from announcing that an undisputed fact may not be used as a basis from which to draw a reasonable conclusion, even though some other and opposite conclusion equally reasonable might also be drawn; otherwise, we might have a condition where a question of fact could not be settled, because the circumstances upon which its settlement depended might point to two or more equally reasonable conclusions. As between two or more reasonable deductions from circumstantial evidence, the court is not at liberty to direct which one the jury shall adopt." (pp. 616 and 617.)

The case of *Hutchens v. McClure*, 176 Kan. 43, 269 P. 2d 473, also involved an automobile accident. At page 46 of the opinion, the court said:

"Negligence like any other issue of fact may be proved by circumstantial evidence. (See *Brown v. Clark*, 152 Kan. 274, 103 P. 2d 907.)

"It was the province of the jury to weigh all conflicting evidence and to draw all reasonable conclusions from the evidence offered. (See *Brugh v. Albers*, 141

Kan. 223, 40 P. 2d 380; *Sawhill v. Casualty Reciprocal Exchange*, 152 Kan. 735, 107 P. 2d 770; and *Briggs v. Burk*, 174 Kan. 440, 257 P. 2d 164.)"

Attention is further directed to *Haga v. Moss, Administrator*, 181 Kan. 171, Syl. ¶ 5, 311 P. 2d 281.

In view of the above authorities, and those cited in the opinions, we shall attempt to review plaintiff's evidence. Witness Harris, another truck driver, testified that he came up behind the defendant's truck near the "Lindsborg overpass"; that after leaving the overpass, witness tried to pass defendant on at least five occasions but each time was prevented from passing by the fact that defendant's truck would start to wander over toward the left side of the road; that witness gave up trying to pass and remained behind defendant; that defendant kept on "roadwalking his rig" across the road, that he would gradually let it wander over to the left side and appeared to me he would wake up, or appeared to be sleeping, then would whip it back to the right side of the road. Witness further testified that on a certain curve by some elevators, defendant did not stay in the right lane at all but cut across the left inside lane; that no signals were given on making these swerves; that there were times when defendant was entirely on the wrong side of the road; that when defendant reached the bridge just south of the place of the accident, witness was some quarter mile behind him and defendant had one dual wheel right on the center line of the highway. Harris testified that his attention was distracted for a moment by an airplane and he did not see the accident but that when he glanced back, the road was full of smoke and fire. Witness parked his own truck and went up to the scene of the collision.

It seems to be established that the defendant's truck and trailer were jackknifed, with the tractor headed northwest just off on the shoulder on the east side and the rear wheels of the trailer still on the pavement; and that the plaintiff's truck had been turned on its side and was now lying on the west half of the pavement. Plaintiff's truck was now headed north. The gasoline in defendant's truck caught fire and the fire department from Salina and a foam truck from Schilling Air Base were called to put out the fire.

Both witness Harris and plaintiff's other witness, highway patrolman Northup, testified to the finding of tire marks on the west shoulder of the road some eighty feet north down to about the position of plaintiff's truck. Trooper Northup was unable to identify the marks as belonging to plaintiff's truck. He spoke of the difficulty

caused by the large amounts of water, foam and feed which covered the area of the accident. The patrolman testified that there was a gouged hole in the pavement six and one-half feet from the west edge and that he believed it had been caused by a piece of metal from one of the trucks gouging out the pavement. The pictures would seem to show a great deal of metal hanging to the wreck of plaintiff's truck including part of the engine, and the trooper testified that at least one tire was flat. The only metal part torn off defendant's truck seems to have been a gas tank which was down in the gully. The patrolman agreed to the proposition that the accident could have happened—it was demonstrated with models— if the plaintiff's truck had been in its right lane of traffic (west lane) and the vehicles might have come to rest in the same positions where they were found. He also testified that he found a partially filled package of "No-Doz" pills in the cab of defendant's truck.

We believe the above résumé of plaintiff's evidence, which is not entirely complete, is sufficient to support the findings and verdict of the jury. Again it should be remembered that the weight and credibility of the evidence was for the jury and is not for this court. The findings and verdict were approved by the trial court.

The second proposition submitted in defendant's brief deals with the instructions of the trial court. The principal objection to the instructions appears to have been directed against Instruction No. 3 of the court which dealt with circumstantial evidence. The defendant requested no specific instructions upon this matter, but after the trial court had prepared his instructions, they were submitted to counsel for both sides in chambers. At that time defendant objected to the instruction on circumstantial evidence proposed by the court citing *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158, and contending that in relying upon circumstantial evidence, the circumstances relied upon must be of such a nature and so related one to the other that the only reasonable conclusion to be drawn therefrom is the theory sought to be established. The Goodloe case affirmed the order of the trial court in sustaining a demurrer to the evidence of the plaintiff where the evidence seemed to show that plaintiff, a pedestrian, was attempting to cross a city street between intersections and not in a marked cross walk and was hit by or walked into the side of a truck. In the opinion by the now Mr. Chief Justice Parker it is said in part:

"Conceding, at the outset, that from our legion of reported negligence cases there may be found decisions in which something has been held or said that

can be regarded as tending to support the respective contentions advanced by each of the parties it must be kept in mind that every negligence action is first of all dependent upon the factual situation disclosed by the record on which it is decided. There are, of course, certain fundamental principles of law applicable to negligence actions generally but in the final analysis the facts of each particular case determine its decision when tested by those principles."

There is nothing in the actual opinion of the Goodloe case which would go to the extent claimed by the defendant in this case, although certain quotations cited at least indicate some support for defendant's contention. However, from the cases of *Sternbock v. Consolidated Gas Utilities Corp., Briggs v. Burk* and the other cases cited *supra* together with the many cases relied upon in those decisions, we deem that this court has refused to follow the rule sponsored by the defendant. Mr. Chief Justice Parker was the author of the opinion in *Briggs v. Burk,* supra, which specifically followed the Sternbock case. While the court's instruction on circumstantial evidence may not have been entirely a model instruction, we do not find any reversible error.

There are certain other matters which we shall take up briefly under the head of the instructions of the court. It appears from the record that the trial court gave his instructions to the jury in the afternoon of a January day and then because of a threatening blizzard released the jury to return the next day; that thereafter counsel and the court agreed that the court would add an additional supplement to one of the court's instructions on the return of the jury. It appears that on the next afternoon when all parties and the jury had reassembled, the defendant submitted a requested instruction upon the principle of action in an emergency. The requested instruction was refused by the court, primarily perhaps, on the ground that it came too late and after the jury had been fully instructed. This requested instruction has been numbered 5 by defendant. Besides the tardiness of the request, we find no real evidence in the record showing that defendant was faced by any emergency. Moreover, in submitting requested instructions to the court under the provisions of G. S. 1949, 60-2909, *Fifth,* such requests should be submitted in ample time for the court to consider them when it is framing its own instructions. The statute reads, "when the evidence is concluded." Certainly any request submitted as late as requested instruction No. 5 could only be addressed to the discretion and indulgence of the trial court, and to the acquiescence of the opposing party. Here plaintiff objected to the late request.

In his brief, defendant also objects to an answer given to a question relating to the special findings submitted to the court by the jury after it had retired. No objection is shown in the abstract of the defendant and the counter abstract would indicate that neither this point nor requested instruction No. 5 was brought to the attention of the trial court on motion for new trial. We do not choose to labor the question further.

Defendant complains of the fact that plaintiff's counsel was permitted to cross-examine defendant concerning certain convictions for traffic violations since about the year 1952. It appeared that defendant had been convicted of some ten moving traffic violations during that time. Defendant on his direct examination had testified that he had driven trucks since he was seventeen years of age; that he had been in the trucking business with his father and brother since he was a small boy. Counsel stated to the court that the cross-examination was only to go to the question of veracity. The only objections made by defendant to this line of questioning at the time was an objection that one question called for a conclusion and that another was too remote. Without deciding whether the defendant had opened the door to such examination or whether it might have been objected to on other theory, we fail to find any error upon the record.

Defendant attempted to introduce certain evidence which was excluded by the trial court, but now concedes in the reply brief that no proper showing was made at the time of the motion for new trial to entitle him to have these matters reviewed.

The court has carefully examined the record in this appeal, including all matters not covered specifically in the opinion, and is convinced that it shows no reversible error. The judgment of the trial court should be affirmed.

It is so ordered.